**AIRPORT SHUTTLE SERVICE, INC.,**
Respondent-Appellee Below, Appellant,

v.

**Dorothy C. CURRAN, Claimant-**
**Appellant Below, Appellee.**

Supreme Court of Delaware.

Oct. 8, 1968.

Max S. Bell, Jr., of Richards, Layton & Finger, Wilmington, for respondent-appellee below, appellant.

Sidney Balick and Bernard Balick, of Aerenson & Balick, Wilmington, for claimant-appellant below, appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice:

This appeal requires the application of the provision of our Workmen's Compensation Act defining an off-the-premises injury "arising out of and in the course of the employment." [1]

The determinative facts are undisputed:

John H. Curran was employed by Airport Shuttle Service, Inc. as a chauffeur. He operated a station wagon carrying passengers between the Philadelphia International Airport and the Wilmington area, a distance of about 25 miles. He usually began work at about 3:30 P.M., a night shift that often ended after 2:00 A.M.

Under the employer's rules then governing him, Curran's work period was not considered completed until he had discharged all passengers, returned to the employer's headquarters in Wilmington and turned in the day's cash receipts, and arrived at his home with his vehicle. The employer's rules were not deemed violated so long as the cash receipts were thus delivered prior to 8:00 A.M.

On the day in question, Curran commenced work at the usual time. After several trips back and forth, he arrived at the Airport at about 11:30 P.M. and waited there until about midnight for further instructions from the dispatcher. A few minutes thereafter, having left the Airport premises, Curran telephoned the dispatcher for further orders, saying he was "only about five minutes away." Not needed then, he called back a few minutes later

---

1. 19 Del.C. § 2301 provides in part:

" 'Personal injury sustained by accident arising out of and in the course of the employment:'

"(1) shall not cover an employee except while he is engaged in, on, or about the premises where his services are being performed, which are occupied by, or under the control of the employer (his presence being required by the nature of his em-

ployment), or while he is engaged elsewhere in or about his employer's business where his services require his presence as a part of such service at the time of the injury; * * *."

19 Del.C. § 2304 provides for compensation for "personal injury or death by accident arising out of and in the course of employment."

and was told he was needed for a trip at 12:30 A.M. He asked to speak to another driver who was there; and the two agreed to switch trips, the other driver to take Curran's 12:30 A.M. order and Curran to take the other's later assignment. Curran called the dispatcher again for instructions at 1:00 A.M., was told that he would not be needed further, and was dismissed for the day. The last call came from a telephone in the Chester, Pennsylvania area, about midway between Philadelphia and Wilmington.

At 3:55 A.M., Curran was involved in an automobile accident on the highway leading from the Airport to Wilmington, at a point about 5½ miles south of the Airport near Chester. The highway was the one usually used by Curran and the employer's other drivers in traveling between Wilmington and the Airport. At the scene of the accident, the highway consisted of two northbound and two southbound lanes, separated by an elevated concrete divider that commenced about a mile back toward the Airport. Curran's vehicle was being operated southbound (toward Wilmington) but in the northbound lanes, and it collided head-on with a northbound vehicle. Curran was fatally injured in the accident, being rendered unconscious immediately, and he died without regaining consciousness. In his pocket was found the employer's usual envelope containing his cash receipts and the record of his trips for the day.[2]

Curran's widow sought benefits under the Workmen's Compensation Act. The Industrial Accident Board found that Mrs. Curran "did not by a preponderance of competent factual testimony establish that the fatal injury of John H. Curran * * * arose out of and in the course of employment * * *." The widow appealed to the Superior Court which concluded that the above facts constituted a *prima facie* showing; and, in the absence of evidence to the contrary, the Superior Court reversed and remanded with instructions to enter

an appropriate award for the claimant. See 238 A.2d 817. The employer appeals.

The Industrial Accident Board obviously assumed, and the Superior Court expressly assumed, that Curran embarked on a personal mission between his last call to the dispatcher and the accident. For present purposes we make the same assumption, although the evidence is equally consistent, we think, with his having stopped during the interval for a necessary nap, for a flat tire, or for a temporary illness.

■ Assuming such deviation from his usual route back to Wilmington, did Curran's fatal injuries arise "out of and in the course of the employment" under the § 2301 definition? Otherwise stated in the statutory language, was Curran engaged "in or about his employer's business where his services require[d] his presence as a part of such service at the time of the injury"? In our view, the only reasonable conclusion to be drawn from the undisputed facts is that he was; and, in our opinion, the Industrial Accident Board was clearly wrong in finding that the evidence did not warrant such conclusion. Compare Lank v. Steiner, Del., 224 A.2d 242 (1966).

The employer's business and rules required Curran to drive back to Wilmington, to deliver the day's receipts, to have his vehicle serviced, and to commence another work shift later in the day. The only reasonable inference to be drawn from the uncontroverted facts, in our view, is that at the time of the accident, any deviation had terminated and Curran was enroute back to Wilmington. Thus, in driving back to Wilmington, Curran was "engaged * * in or about his employer's business." And in so doing, Curran used the same highway ordinarily used by him and the employer's other drivers as the regular route from the Airport to Wilmington. Thus, at the time of the accident, Curran was "where his services require[d] his presence as a part of such service." Compare Children's

---

2. Further details of the factual situation are set forth in the Opinion of the Superior Court at 238 A.2d 817.

Bureau of Delaware v. Nissen, 3 Terry 209, 29 A.2d 603 (1942).

 The employer contends that Curran's death is not compensable under our Act because he was not at the place of the accident about three hours earlier, which would have been the situation had there been no deviation, it being the employer's position that the § 2301 definition requires such synchronization of regular time and place. The crux of this argument is that Curran's services did not require him to be at the locus of the accident at 3:55 A.M.; and for that reason there was no coverage under the § 2301 definition. We disagree, especially in view of the undisputed fact that the employee did not have regular working hours, and was not required to return at a stated hour. He was free to report in at any time before 8:00 A.M. and, under the facts of this case, his presence where his services required him to be in the course of the employer's business was as effective at 3:55 A.M., for present purposes, as it would have been at 1:55 A.M. or 2:55 A.M.

The employer also contends that Curran's injury and death are not covered by the Act because he was driving on the wrong side of the highway at the time of the accident. This argument is without merit. He may have been negligent in being there; but, of course, negligence is not a defense to this claim; and we think it unreasonable to infer merely from his being in the wrong lane of traffic that he was still engaged in a deviation.

Such application of § 2301 is in accord with the general rules prevailing in this field of the law. It is generally held that a deviation from a business trip for personal reasons takes the employee out of the course of his employment until he returns to the route of the business trip. In this connection, great emphasis is placed upon the route being used at the time of the accident. If the regular business route has been resumed after a deviation, and there is a continuation of the trip toward the business destination, it is generally held that the employment has been resumed, and an injury suffered thereafter is deemed to be in the course of employment. See 1 Larson, Workmen's Compensation Law § 19, pp. 265–295.

We hold that Curran's death is covered by the Act; and that an appropriate award should be made pursuant to the widow's claim.

The judgment below is affirmed.